**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| TAMARA LAVON WILLIAMS, | ) | |
| INDIVIDUALLY & AS SURVIVING | ) | |
| MOTHER OF CIERRA BROWN, | ) | |
| DECEDENT; MIKE RAYMOND | ) | |
| BROWN, INDIVIDUALLY, AND AS | ) | |
| SURVIVING FATHER OF CIERRA | ) | |
| BROWN, DECEDENT, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 4:21-cv-02066 |
| v. | ) | |
| GREENWOOD MOTOR LINES, | ) | |
| INC. D/B/A R+L CARRIERS; | ) | |
| CHRISTOPHER LEE ZATEZALO, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW the Defendants, Greenwood Motor Lines, Inc. d/b/a R+L Carriers ("GML") and Christopher Lee Zatezalo ("Zatezalo"), pursuant to 28 U.S.C. § 1404(a), and respectfully move this Court to transfer venue to the United States District Court for the Western District of Kentucky, Bowling Green Division, and in support thereof would show as follows:

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

1.      As alleged in the operative First Amended Complaint (the "FAC," Doc. 5) and further detailed in the attached Kentucky Uniform Police Traffic Collision Report (the "Police Report," **Exhibit "A"** hereto), this wrongful death action arises out of a February 6, 2021 vehicle accident (the "Accident") occurring on Interstate 65 South near Bowling Green in Warren County, Kentucky that claimed the life of Kentucky-licensed driver Cierra Brown (the "Decedent"), the

1

daughter of Plaintiffs Tamara Lavon Williams ("Williams") and Mike Raymond Brown ("Brown").

2.      Just before 5 a.m., the Decedent was driving her 2003 Ford Taurus (the "Taurus") in the southbound right-hand lane when she "r[an] out of gas." Ex. A at 2, Narrative.  For reasons unknown, the Decedent did not move her "disabled" Taurus off the roadway and, as a result, ended up "stopping in the right-hand lane … near mile marker 32.2." *Id.*; *see also* Doc. 5 at 2-3 ¶ 8.

3.      At the same time, CDL-driver Defendant Zatezalo, who was operating a 2020 Peterbilt 579 commercial tractor towing tandem semitrailers (the "CMV") for and on behalf of interstate motor carrier Defendant GML, was "also traveling southbound in the right-hand lane of the same roadway." Doc. 5 at 3 ¶ 9; *see also* Ex. A at 2, Narrative.  As he approached mile marker 32.2, Zatezalo "noticed the vehicle in the roadway" and reacted by "steer[ing] left towards the center lane, but was unable to avoid striking" the Decedent's disabled Taurus, which "was knocked into the right shoulder of the southbound lanes before entering a ditch line and finally coming to final rest." Ex. A at 2, Narrative.

4.      Kentucky State Police Trooper Michael Wathen, the Investigator who authored the Police Report, was dispatched to the scene almost immediately after the Accident and arriving on scene 15 minutes later at 5:11 a.m. *Id.* at 1.  With the Decedent having "sustained fatal blunt force trauma as a result of the collision," a Warren County Assistant Coroner was also dispatched to the scene to formally pronounce the Decedent as deceased.  *Id*. at 2, Narrative; *see also* Doc. 5 at 3 ¶ 12.  The Police Report further indicates that a "Death Investigation" was opened, resulting in the creation of a "full reconstruction report" that "will be available for release after a minimum of (6) months from the date of death." Ex. A at 2, Narrative.  Additionally, blood samples taken from both drivers were sent to the "KSP Lab" for toxicology testing. *Id*. at 3 & 4.

256409974v.2

5.     With further regard to the Decedent, the Police Report and Defendants' pre-removal investigation indicate that at the time of the Accident, she permanently resided in Bowling Green (zip code 42101); held a Class D Kentucky driver's license; and was the titled owner of the Taurus, which was registered in the State of Kentucky.  *See* Doc. 1 at 3 ¶ 10(c); Ex. A at 4.

6.     With further regard to the Defendants and the CMV, Plaintiffs' FAC, the Police Report, and Defendants' pre-removal investigation consistently indicate Zatezalo is a permanent resident of Spring, Texas (Harris County) with a Class A Texas commercial driver's license; he operated the CMV for and on behalf of GML, which is an interstate motor carrier incorporated under South Carolina with its headquarters in Wilmington, Ohio; and the CMV's tractor was registered in the State of Indiana.  *See* Doc. 1 at 4 ¶¶ 11-12; Doc. 5 at 2, 3 ¶¶ 4, 9; Ex. A at 3.

7.     As the Notice of Removal alleged in detail, Plaintiff Williams is a permanent resident and domicile of the State of Kentucky and Plaintiff Brown is a permanent resident and domicile of the State of Louisiana.  Doc. 1 at 3 ¶ 10(a)-(b).

8.     Following removal, Plaintiffs filed an amended pleading, Document 5, which notably confirms that Defendants' Notice of Removal allegations establishing complete "diversity of citizenship between the parties" were correct; that "the matter in controversy exceeds the sum of $75,000.00"; and that "federal diversity of citizenship is satisfied."  Doc. 5 at 1-2 ¶¶ 1-4, 6-7.

## II.     ARGUMENT AND AUTHORITIES

### A.     Legal Standard for Transfer of Venue under 28 U.S.C. § 1404(a)

9.     Section 1404(a), as the codified "*forum non conveniens*" doctrine for transfers "within the federal court system," *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 61 (2013), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought." 28 U.S.C. § 1404(a).  The statute, which serves the important purposes of preventing the waste of time, energy, and money and protecting litigants, witnesses and the public against unnecessary inconvenience and expense, *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1981), authorizes transfer from a proper original venue "to any district where venue is also proper," when the latter forum is more convenient.  *Atlantic Marine*, 571 U.S. at 59.

10.    Application of § 1404(a) involves a familiar two-step process.  First, the forum district court evaluates whether the requested transferee venue is one in which the case could have originally been filed.  *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004). Second, the forum district court must then determine if transfer is "for the convenience of the parties and witnesses and in the interest of justice."  *Id*.  The decision to transfer a pending case is committed to the sound discretion of the district courts.  *Van Dusen*, 376 U.S. at 616; *Volkswagen I*, 371 F.3d at 203.  Nevertheless, the Fifth Circuit has directed that a district court considering transfer under § 1404(a) "must consider 'all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"  *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989) (quoting, 15 C. Wright, A. Miller & E. Cooper, FED. PRAC. & PROC., § 3847, at 370 (2d ed.1986). 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847, at 370 (1986)).

11.    Prior Fifth Circuit decisions delineate eight private and public interest factors that should be taken into account when considering transfer.  *See e.g. In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013); *In re Volkswagen of Am., Inc. ("Volkswagen II")*, 545 F.3d 304, 315 (5th Cir. 2008).  The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and, (4) all other practical problems that make trial of a case easy,

expeditious and inexpensive. *In re Radmax, Ltd.*, 720 F.3d at 288; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws of the application of foreign law." *Id.*

12.     The party seeking transfer under § 1404(a) bears the burden of establishing that venue should be changed. *Volkswagen II*, 545 F.3d at 314-15.  However, a movant need not meet the previously-existing "'heavy burden'" associated with the common law "*forum non conveniens* doctrine," which only allowed for "dismissal … in favor of a substantially more convenient alternative."  *Id.* at 314.  Instead, the Fifth Circuit holds that § 1404(a), having codified "'relaxed standards for transfer,'" *id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)), imposes a "'good cause' burden" on a party seeking transfer that "'lessens the weight to be given' to the plaintiff's choice of venue" but nevertheless recognizes that the plaintiff's preferred forum should be given "appropriate deference."  *Id.* at 315 (quotation omitted).

13.     Accordingly, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id*.  Conversely, when the party seeking transfer "demonstrates that the transferee venue is clearly more convenient," the movant "has shown good cause and the district court should therefore grant the transfer."  *Id*.

**B.     Transfer to the Western District of Kentucky is Appropriate and Proper**

**1.     Venue Lies in the Western District of Kentucky, Bowling Green Division.**

14.     28 U.S.C. § 1391(b)(2) establishes proper venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  As the FAC and Police Report indicate, the Accident – which is unquestionably *the* substantial event underlying Plaintiffs' claims – occurred in Warren County, Kentucky.  Doc. 5 at 2-3 ¶ 8; Ex. A at 1.

5

15.     By statute, the Western District of Kentucky includes 53 Kentucky counties, one of which is Warren County, with court to be held "at Bowling Green, Louisville, Owensboro, and Paducah."  *See* 28 U.S.C. § 97(b).  These mandated court location comprise the Western District's four jury divisions.  *See* https://www.justice.gov/usao-wdky/about/district.  Warren County is part of the Bowling Green Division, the courthouse for which is located at 241 East Main Street, Bowling Green, KY 42101.  http://www.kywb.uscourts.gov/fpweb/bowling_green.htm.

### 2.     The Applicable Factors Weigh Heavily in Favor of Transfer

#### a.     Plaintiffs' Choice of Venue Should Be Afforded No Deference

16.     Normally, a plaintiff's chosen venue merits some deference.  *Reyno*, 454 U.S. at 255.  "However, when the plaintiff's chosen forum has little or no factual connection to the case, the plaintiff's choice carries less weight."  *Molina v. Vilsack*, No. CIV. A. V-09-40, 2009 WL 5214098, at *2 (S.D. Tex. Dec. 23, 2009) (citing *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001)); *see also Boller v. National Mediation Bd.*, 647 F. Supp. 1060, 1062-63 (S.D. Tex. 1986) ("The only connection this action has to the forum is that the two individual plaintiffs happen to live here.  There is no factual nexus between this action and this forum.").

17.     Further, when the plaintiff "does not reside in" the venue where suit is filed, the "choice of forum receives less deference."  *Martone v. Livingston*, No. 3:13-CV-283, 2013 U.S. Dist. LEXIS 162081, 3 (S.D. Tex. Nov. 14, 2013) (citing *Apparel Prod. Servs., Inc. v. Transportes De Carga Fema, S.A. de C.V.,* 546 F. Supp. 2d 451, 455 (S.D. Tex. 2008)).  The same is true when "the operative facts underlying the case did not occur in the chosen forum."  *Apparel Prod. Servs.,* 546 F. Supp. 2d at 455 (citing *In re Horseshoe Entm't*, 337 F.3d 429, 434-35 (5th Cir. 2003)).

18.     Based on the fact Zatezalo permanently resides in Harris County and interstate motor carrier GML engages in business throughout Texas, venue is not improper in the Southern District of Texas.  However, there is absolutely no nexus between Plaintiffs' claim and the

Southern District.  In this regard, *Boller* indicates that Zatezalo's Harris County residence does not establish any nexus.  Nor does it matter that Plaintiffs' chosen counsel practice in Texas because their law firm is located in Dallas, which is outside of the Southern Division, and in any event, under Fifth Circuit precedent, the "location of counsel is irrelevant and improper for consideration in determining the question of transfer of venue." *In re Horseshoe*, 337 F.3d at 434.

19.     With the Houston metropolitan area having absolutely no connection with the Accident, the Plaintiffs, or the Decedent, Harris County deserves no deference.

**b.     The Location of the Alleged Wrong Warrants Transfer**

20.     A critical factor in a venue challenge is the place of the alleged wrong. *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016); *Holmes v. Energy Catering Services, LLC.*, 270 F. Supp. 2d 882, 886 (S.D. Tex. 2003); *Robertson v. M/V Cape Hunter*, 979 F. Supp. 1105, 1108 (S.D. Tex. 1997).  It is undisputed the Accident occurred near Bowling Green, where the Decedent resided.  Accordingly, this important factor favors transfer.

**c.     The Relative Ease of Access to Sources of Proof Favors Transfer**

21.     The Bowling Green Division of the Western District of Kentucky would serve as a more efficient venue for the parties' access to sources of proof.  In this regard, there is no relevant proof in the Houston area, while significant proof is found in the Bowling Green area, including the scene of the Accident, law enforcement records, EMS records, and coroner records.

**d.     The Substantial Inconvenience and Cost of Witnesses Favors Transfer**

22.     The selection of Harris County as a venue is wholly inefficient because there are no witnesses located anywhere close to the Houston area, implicating greater cost and inconvenience for witnesses.  The Fifth Circuit has held that the distance and cost to available witnesses should be considered in transfer analysis, even if within a 100-mile distance. *In re Radmax, Ltd.*, 720 F.3d at 289.   Furthermore, it has been found that the farther the distance, the

7

greater the travel time, leading to further costs, and these attributes accumulate to further time away from work, a result not desired under §1404(a). *Volkswagen I*, 371 F.3d at 205.

23.     The Fifth Circuit's application of this factor in *Volkswagen I* is particularly instructive.  That product liability case arose out of a highway crash in San Antonio, part of the Western District of Texas; however, the lawsuit was filed in the Marshall Division of the Eastern District, a driving distance of "approximately 390-400" from San Antonio, even though the Eastern District had "no factual connection with the events of this case." *Id.* at 202-04, 206.   The Volkswagen defendants, after bringing third-party claims against two allegedly responsible San Antonio residents, sought transfer to the Western District's San Antonio Division, but the district court denied that motion upon the erroneous belief that the local "witnesses to the accident" in that case deserved less consideration because it was "a products liability suit." *Id.* at 205.  In holding that the district court abused its discretion in denying transfer, the Fifth Circuit rejected the premise that the local witnesses were less important because "the site of the accident, *i.e.*, the Western District of Texas, became a relevant factor" once the Volkswagen defendants brought their third-party claims against the San Antonio residents. *Id.*

24.     The basis for transfer in this case is even stronger because the Plaintiffs' chosen Harris County/Houston forum is over 700 miles away from the Warren County, Kentucky Accident scene as the crow flies and over 800 miles traveling by car.  There is no explanation, other than forum shopping, for suit to be filed in Harris County.

25.     In direct contrast, Defendants' proposed transferee forum is the most convenient trial venue for the local witnesses.  Indeed, a Google Maps directions search indicates that the Bowling Green Division courthouse is located less than 16 miles away from the I-65 South Accident scene at mile marker 32.2, close enough for a local jury to view that scene if needed.

### e.    Availability of Compulsory Process to Secure Attendance of Witnesses

26.    Under this factor, "'it is the convenience of non-party witnesses, rather than that of party witnesses, that is the more important factor and is accorded greater weight in a transfer of venue analysis.'"  *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 410 (S.D. Tex. 2016) (quoting *State Street Capital Corp. v. Dente*, 855 F. Supp 192, 198 (S.D. Tex. 1994)). "Particularly, it is 'the location of key, non-party witnesses that dominates,'" *id.* (quoting *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 826 (S.D. Tex. 1993)); and the convenience of even "one key witness may outweigh the convenience of numerous less important witnesses." *Id.* (quoting *Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401-02 (N.D. Tex. 1984)).

27.    Moreover, "'when nearly all of the nonparty witnesses that will testify concerning disputed issues reside elsewhere, this factor weighs in favor of transferring the case.'" *Id.* (quoting *Frederick v. Advanced Fin. Solutions, Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007)).  This is precisely the circumstance found in this case.  The expected key witnesses with personal knowledge about the Accident are located in the Bowling Green area, with no important fact witnesses found in the Houston area.  Plaintiff Williams, moreover, is a domicile of Barren County, Kentucky, *see* Doc. 5 at 1 ¶ 1, which borders Warren County to the east and is also part of the Bowling Green Division.  *See* https://www.justice.gov/usao-wdky/about/district.

28.    As the Fifth Circuit made clear in *Volkswagen I*, , the interests of "fact witnesses" in a vehicular accident case including responding "policemen" and "emergency medical personnel"; "eyewitnesses"; and others "who assisted at the collision scene," must be "considered as 'witnesses' whose convenience would be substantially improved by a trial of these claims" in the jurisdiction where the collision occurred.  371 F.3d at 204.  Indeed, "[i]n a negligence case, as opposed to a products liability case, the importance of trying the case in the district where the

accident occurred generally outweighs deference to the Plaintiff's choice of forum" because "the investigators and accident-scene witnesses likely to be called to testify at trial generally reside close to the scene" and "evidence critical to establishing, and defending, negligence claims is generally found at or near the scene." *Purdy v. Munden*, 356 F. Supp. 2d 658, 660 (E.D. Tex. 2005) (transferring wrongful death suit to the place of the underlying interstate accident).

### d.    Local Interest Strongly Favors the Bowling, Green Kentucky Venue

29.    The local interest factor recognizes a "preference for 'the venue in which the events giving rise to the litigation occurred,'" *Watson*, 181 F. Supp. 3d at 412 (quoting *Molina*, 2009 WL 5214098, at *10)), and for "resolving disputes involving local citizens in their own locality." *Id.* Indeed, "[t]he interest in having 'localized interests' decided at home is particularly weighty here because '[t]he place of the alleged wrong is one of the most important factors in venue determinations.'" *Id.* (quoting *Devon Energy Prod., Co. v. Global Santa Fe South Am.*, 2007 WL 1341451, at *8 (S.D. Tex. May 4, 2007)); *see also Volkswagen I*, 371 at 206 (San Antonio's "'local interest in having localized interests decided at home'" deemed to be a factor "weigh[ing] heavily in favor of [transfer]" (quoting Reyno, 454 U.S. at 241 n.6)).

30.    Separately, a prior decision of this Court found that a judicial district's citizens have a strong "local interest in adjudicating disputes arising from an accident that occurred on the freeways in their district." *Purdy*, 356 F. Supp. 2d at 660.  Local interests strongly favor transfer to the Bowling Green Division.

### g.    Administrative Difficulties Flowing from Court Congestion

31.    Based on the most recent Federal Court Management Statistics for the March 31, 2021 Reporting Period (available at https://www.uscourts.gov/file/33198/download), the Median Time for a Civil case "From Filing to Disposition" is 8.6 months in this Court and 9.1 months in

the Western District of Kentucky.  With little time difference between the two venues and indications that court congestion is "'the most speculative" factor, *see Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV390, 2010 WL 3855520, at *7 (E.D. Tex. Sept. 30, 2010) (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009)), this factor would appear to be essentially neutral.

### g.     The Remaining Factors Strongly Favor Transfer

32.     With nearly all of the above-discussed factors supportive of transfer to the Bowling Green federal court, the two remaining public interest factors – the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of laws of the application of foreign law – strongly weigh in favor of transfer.  With the underlying Accident having occurred on a Kentucky interstate and the involved parties collectively being citizens of five different states – Kentucky (Plaintiff Williams and the Decedent), Louisiana (Plaintiff Brown), Ohio (Defendant GML), and South Carolina (Defendant GML), and Texas (Defendant Zatezalo), a threshold question for consideration in this diversity action is which state's substantive law governs the Plaintiffs' tort claims.

33.     Such question, as previously recognized by this Court, "a court must apply the choice-of-law rules of the forum in which it sits over state-law claims when the court has jurisdiction based on diversity of citizenship." *ASARCO LLC v. Americas Min. Corp.*, 382 BR 49, 62 (SD Tex. 2007) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under "Texas choice-of-law rules for causes of action in tort," courts "apply section 145 of the Restatement (Second) Conflict of Laws, also described as the 'most significant relationship test," to determine which law should apply.  *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 674 (5th Cir. 2003)).

11

Under this test, "the local law of the state which has the 'most significant relationship to the occurrence and the parties' will govern the claim." *Id.* (quoting *Duncan*, 665 S.W.2d at 421).

34.     The applicable "test requires that the Court consider which state's law has the most significant relationship '*to the particular substantive issue to be resolved*,'" and in tort cases specifically, the parties' respective "rights and liabilities … are determined by the local law of the state which, *with respect to that issue*, has the most significant relationship to the occurrence and the parties.'" *Id.* (quoting *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)). In performing this task, courts are guided by "the following factors (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered." *Id.*

35.     Without getting into a lengthy choice-of-law discussion at this early stage, Defendants would note that all four factors point to Kentucky as the state whose substantive law should govern Plaintiffs' wrongful death claims.  In this regard, (1) the Accident occurred in Kentucky, (2) Defendant Zatezalo's alleged actionable breaches of tort duties occurred in Kentucky, (3) the Decedent and her mother Plaintiff Williams hold Kentucky citizenship, and (4) there is no "relationship" between the Decedent/Plaintiffs, on the one hand, and the Defendants, on the other hand, outside of the Accident that occurred in Kentucky.  In sharp contrast, the only factor implicating Texas is (3) Defendant Zatezalo's domiciliary residence being located in Harris County.  While enough to support venue in the Southern Texas of Texas, Zatezalo's citizenship establishes "no factual nexus between this action and this forum," *see Boller*, 647 F. Supp. at 1062-63, such that Texas has no contacts of a "qualitative nature."  *ASARCO*, 382 BR 49 at 62.

36.     With Kentucky law almost certainly implicated, a transfer of venue to the Western

District of Kentucky will resolve any concerns over the application of non-forum law.

## IV.    CONCLUSION

Defendants have clearly established that transfer is justified for the convenience of the parties, witnesses, and in the interest of justice. *Volkswagen II*, 545 F.3d at 315. Plaintiffs' choice of venue is granted little to no weight due to the lack of any significant connection to Houston, Harris County, or the Southern District of Texas. The only proper venue in this case is the Western District of Kentucky's Bowling Green Division, the courthouse for which is located in Warren County, just minutes away from where the Accident occurred.

WHEREFORE, Defendants pray that this Court will transfer venue to the United States District Court for the Western District of Kentucky, Bowling Green Division, and for any other and further relief to which they may be justly entitled, in law or in equity.

Dated: August 6, 2021

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

 */s/ Jeffrey W. Hastings*
Jeffrey W. Hastings
State Bar No.: 09209150
Federal I.D. No. 13481
Email: jeffrey.hastings@wilsonelser.com
909 Fannin Street, Suite 3300
Houston, Texas  77010
Phone: (713) 353-2030
Fax:    (713) 785-7780

**COUNSEL FOR DEFENDANT GREENWOOD MOTOR LINES, INC., d/b/a R+L CARRIERS AND DEFENDANT CHRISTOPHER LEE ZATEZALO**

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that foregoing document was electronically filed with the Court on August 9, 2021.  Notice of this filing will be sent by operation of the Court's case management and electronic case filing system.

Patricia M. Morgan
**KELLEY LAW FIRM, P.C.,**
201 N. Harwood St.,
Dallas, Texas 75201
Telephone (972)-850-0500
Facsimile: (972)-850-0400
Morgan@kelleyfirm.com

*/s/ Jeffrey W. Hastings*
Jeffrey W. Hastings

256409974v.2